Pratt, J.
The agreement of dissolution, dated December 1, 1886, and set out in the complaint, provides that during the full term or terms of the respective contracts-then existing between Merritt & Co. and Hagedorn & Newman with Wannamaker & Co., E. A. St. John, the retiring partner, should sell the goods of those firms in conjunction with Susan E. Wannamaker, the defendant; and that the commissions realized from said sales shall be equally divided between the parties to the agreement.
The complaint alleges that defendant has violated that agreement by refusing constantly to allow St. John to make such sales, though often requested; and has refused to-divide the commissions -realized from such sales, for which, plaintiff claims damage.
Motion is now made by plaintiff for a discovery by defendant of the sales and commissions.
, The motion is resisted on the ground, among others, that the contract between Merritt & Co. and Wannamaker & Co. “was terminated in accordance with the terms thereof,” by a letter written by Merritt & Co., a copy of which, is annexed to defendant’s affidavit. The contract between Merritt & Co. and Wannamaker is also annexed. Erom an inspection thereof it appears that by its terms Wannamaker & Co. were to be allowed to sell the goods of Merritt & Co. through a large extent of territory for the' term of three years from April 10, 1886, “unless the contract therefor should be sooner terminated by mutual consent.”
No act by Merritt & Co. could terminate the contract- *481 unless consented to by the other contracting party. And after Wannamaker and St. John had agreed that “ during the full term of the contract ” St. John should be entitled to half its benefits, any consent by Wannamaker to its termination would be a fraud upon St. John, unless by him consented to, and would be ineffectual to destroy his rights.
It follows that if any sales were made during three years, from April 10, 1886, by Wannamaker of goods manufactured by Merritt & Co., the rights of St. John would attach, irrespective of any arrangement between Wanna-maker and Merritt & Co. to which St. John was not a consenting party.
Objection is also made to the discovery of the sales-made by defendant for Hagedorn & Newman.
The affidavit recites that no written contract existed between Wannamaker & Co. and the firm of Hagedorn & Newman, who had, however, been “ in the habit of shipping goods” to Wannamaker before the formation of the firm of Wannamaker & Co., which course of business continued during the existence of that firm.
Whatever may have been the nature of the arrangement between Hagedorn and Newman and Wannamaker & Co., it is plain that the continuance of its benefits to St. John was contracted for in the agreement for dissolution. There is no denial that the sales have continued, nor any allegation that St. John has in any way forfeited his right to one-half the commissions realized upon such sales.
The moving papers contain an allegation that defendant-conducts her business through the agency of her husband ;; from which it is argued that it is not in her power alone to-furnish the information sought, and that discovery should,, therefore, be denied.
It by no means follows that because defendant employs; an agent in her business that she may not herself be well! informed. The presumption of law is that an agent does his duty and keeps his principal fully informed.
*482 But were it otherwise, the discovery would not be thereby thwarted.
A court of equity directing discovery,, requires that the means of knowledge within the reach of the party be diligently resorted to.
The answer must be to the extent of the party’s ability; •and the knowledge of an agent is regarded as the knowledge of the principal.
Nor is the objection valid that Hagedorn & Newman, ■and Merritt & Co. are in possession of the information ■sought. They are strangers to the litigation, and it is not the policy of the law that such parties be vexed with matters in which they have no concern. The parties litigant .are before the court, and each has a right to probe the •conscience of the other. The plea that other means of knowledge exist has never been allowed to prevail.
Defendants-are in error in supposing that the power to enforce discovery is resorted to with reluctance. On the •contrary, wherever confidential relations exist, courts are swift to enforce frank' and full disclosure of all facts in which the parties have a' common interest (Zimmerman v. Dieckerhoff, 28 Weekly Dig. 93, 94).*
*483 The right to call upon the opposing party for knowledge within his possession has always been sustained by courts of ■equity.
The exercise of that right is found so beneficial that vthe power to enforce discovery has been almost universally .granted to courts of law, and is exercised summarily, on .motion, as justice may require.
An action cannot now be maintained in the courts of this State to obtain discovery in the prosecution cr defense of another action (§ 1914, Code Civ. Pro.) ; but that limitation in no way affects the power or duty of the court to ■enforce such discovery as may be required to determine the merits of the action in which the discovery is sought.
Whether it shall be granted in answer to interrogatories filed, as was the ancient custom ; or upon an oral examination of the party at or before the trial; or by requiring ■copies of documents, is matter of detail within the discretion of the court.

 In that case executors of a deceased partner had released the testator’s interest to the surviving partners in consideration of an agreement to pay a lump sum, and they now brought an action to rescind the contract upon an allegation of fraud on the part of defendant in inducing them to make the contract by the use of false charges against the deceased of falsifying the firm books and withdrawing more money from the firm than was shown by his accounts. The plaintiffs, having obtained an order for discovery which proved inadequate, moved for an amendment of it which should allow them a lull, free and unobstructed discovery of all the books and papers of the firm for the period of ten years in question, with leave to take copies of each and every of such books and papers. This motion having been denied, the plaintiffs appealed. The court say, in- an opinion by Dykman, J.: “ In no view should the defendants be permitted to conceal or -withhold any information from the plaintiffs derivable from the books of account, letters or papers of the firm. The plaintiffs are
*483 •executors and have no personal knowledge of the transactions involved in this action. They now claim a large balance due their testator from the defendants, which they say will be exhibited and verified by the books of the firm, while the defendants claim a falsification ■of the same books by the deceased partner. Nothing can tend more to the elucidation and settlement of such controversy than an examination of the books themselves, and in the interest of justice, the fullest latitude and scope should be allowed on such examination.
“ Why should these defendants be permitted to charge a counterfeit ■presentment of these accounts upon the plaintiffs’ testator, and then refuse an examination which will verify or destroy their accusation.
“If their charge of falsification be well founded, they should be the first to open and exhibit the books of account in their own vindication ; and if their accusation be groundless, and they have procured thereby a fraudulent and dishonest settlement, the plaintiffs should be furnished with all the means legally procurable to establish the fraud.
“ The order appealed from should be reversed, with §10 costs and disbursements, and the motion should be granted, with $10 costs ■to the plaintiffs to abide the event.”